UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-2375

PENSION BENEFIT GUARANTY CORPORATION,

Plaintiff - Appellee,

and

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

Party in Interest,

versus

UNITED AIRLINES, INCORPORATED, a Delaware
Corporation, as Plan Administrator for the
United Airlines Ground Employees' Retirement
Plan,

Defendant,

and

AIRCRAFT MECHANICS FRATERNAL ASSOCIATION,

Intervenor/Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (CA-05-269-CMH-BRP)

Argued:  September 18, 2006          Decided:  January 9, 2007

Before WILKINSON and DUNCAN, Circuit Judges, and Henry F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Stanley J. Silverstone, SEHAM, SEHAM, MELTZ & PETERSEN, L.L.P., White Plains, New York, for Appellant. Stephanie L. Thomas, PENSION BENEFIT GUARANTY CORPORATION, Office of the General Counsel, Washington, D.C., for Appellee. **ON BRIEF:** Lee Seham, SEHAM, SEHAM, MELTZ & PETERSEN, L.L.P., White Plains, New York, for Appellant. Jeffrey B. Cohen, Chief Counsel, Nancy S. Heermans, Associate Chief Counsel, Paula Connelly, Assistant Chief Counsel, PENSION BENEFIT GUARANTY CORPORATION, Office of the General Counsel, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Aircraft Mechanics Fraternal Association (AMFA) brings this appeal asserting that the district court erred by concluding that the Pension Benefit Guaranty Corporation's (PBGC) publication of notice of the termination of the United Air Lines (UAL) ground crews' pension plan (Ground Plan) on the termination date constituted "reasonable notice" to the plan participants. We disagree and, thus, for the reasons stated below, affirm the judgment of the district court.

I.

As recited by the district court, the relevant and undisputed facts are as follows:

> PBGC is a government corporation responsible for paying a certain amount to a pension's beneficiaries if the pension has insufficient funds and the plan is covered by PBGC. PBGC may choose to unilaterally terminate a pension plan if it determines that the plan has not met certain minimum funding requirements or "the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated." 29 U.S.C. § 1342. Once PBGC has terminated a plan pursuant to § 1342, it can establish a termination date by agreement with the plan administrator. 29 U.S.C. § 1348. If there is no agreement between PBGC and the plan administrator, a court establishes a termination date. Id.

> UAL is an airline that employs many thousands of employees. Some of those employees received pension benefits as part of their compensation from UAL. UAL administered [the Ground Plan], a large portion of which was made up of aircraft mechanics. AMFA represents many of UAL's employees covered by the Ground Plan, including many of the aircraft mechanics. AMFA signed a collective

3

bargaining agreement (CBA) with UAL on March 14, 2002, on behalf of many of the Ground Plan participants. If the Ground Plan was still effective on March 14, 2005, then UAL would owe an additional $88 million of guaranteed benefits to Ground Plan participants.

UAL filed for bankruptcy on December 9, 2002. UAL failed to pay its minimum funding to PBGC for the Ground Plan on September 15, 2004. On March 10, 2005, PBGC determined that the Ground Plan should be terminated involuntarily pursuant to § 1342 because UAL did not pay its minimum funding and PBGC could suffer unreasonable long term harm by allowing the plan to continue. PBGC sent notices of termination which were received on March 11, 2005, to AMFA's national director, the president of AMFA Local 9 in San Francisco, and UAL. On March 11, 2005, PBGC also published notices of termination in the newspapers of UAL's major hubs: USA Today, San Francisco Chronicle, Los Angeles Times, Rocky Mountain News, Denver Post, Chicago Tribune, and Washington Post. Finally, PBGC issued a press release about the termination and posted that information on its website on March 11, 2005. AMFA actually issued a press release about the termination and posted it on its website that same day, March 11, 2005.

UAL initially opposed the establishment of March 11, 2005, as the termination date, leading PBGC to commence this action. On April 22, 2005, PBGC and UAL settled their dispute and agreed to the termination date proposed by PBGC. The bankruptcy court approved the settlement agreement, and it became official on May 23, 2005. AMFA intervened on behalf of the Ground Plan participants and filed a counterclaim challenging the March 11, 2005, termination date pursuant to 29 U.S.C. § 1303(f) [(allowing certain third parties to contest the termination and termination date of a plan)].

Pension Benefit Guar. Co. v. United Air Lines, Inc., No. 05-0269, 2005 WL 3088455, at *1-2 (E.D. Va. Nov. 10, 2005).

The sole question for the district court on cross motions for summary judgment was whether March 11, 2005, was the appropriate termination date. Stated differently, the court was called upon to consider whether the publication of notice of the termination of

4

the Ground Plan on the termination date constituted "reasonable notice" to the plan participants. The district court answered that question in the affirmative. This appeal by AMFA followed.

II.

We review the district court's granting of summary judgment de novo. In re Maco Homes, Inc., 180 F.3d 163, 165 (4th Cir. 1999). Summary judgment is properly granted when there are no genuine issues of material fact and when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). In determining whether summary judgment is appropriate, the facts are viewed in the light most favorable to the non-moving party. Id. at 255.

III.

A.

As observed by the district court, when disagreements regarding a termination date occur, they are generally between the plan administrator and PBGC. In the instant matter, however, it is AMFA, an outside party, which is marshaling the arguments against the March 11, 2005, termination date.

The district court noted that it was construing "PBGC's date of termination as an agency determination" and then went on to

5

explain that it would review the decision "to see if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." United Air Lines, 2005 WL 3088455, at *2 (citation omitted). The Seventh Circuit Court of Appeals, however, recently rejected the application of this standard in a matter somewhat similar to the one before us today.

> Deference is appropriate when agencies wield delegated interpretive or adjudicatory power-the former usually demonstrated by rulemaking and the latter by administrative adjudication (which also may yield rules in common-law fashion). The PBGC did not use either rulemaking or adjudication to decide that United's plan should be wrapped up [by a certain date]. Its decision was made unilaterally and was not self-executing. The only authority that the PBGC has under § 1342 is to ask a court for relief. That implies an independent judicial role. When making its decision a court must respect any regulations issued after notice-and-comment rulemaking, but the PBGC has not promulgated any rules pertinent to this subject. Nor has it issued the sort of interpretive guidelines that deserve the court's respectful consideration even though they lack the power to control. All the PBGC had done is commence litigation, and its position is no more entitled to control than is the view of the Antitrust Division when the Department of Justice files suit under the Sherman Act. As the plaintiff, a federal agency bears the same burden of persuasion as any other litigant.

In re UAL Corp., (Nos. 06-1867, 06-2843, 06-2662, 06-2714), 2006 WL 3019451, at *3 (7th Cir. October 25, 2006) (citations omitted).

Moreover, in Pension Benefit Guar. Co. v. Heppenstall Company, 633 F.2d 293, 301 (3d Cir. 1980), the court was unpersuaded by PBGC's contention that the court should defer to PBGC's administrative expertise in deciding a plan's termination date on the basis that the statutory scheme makes clear that it is the

6

province of the court to resolve disputes over the termination date.[1] See 29 U.S.C. § 1348(b)(3) (stating that "if no agreement is reached, the [termination] date [is] established by the court").

Nevertheless, AMFA failed to argue that the district court applied the incorrect standard of review. Thus, the issue is deemed waived for purposes of deciding this appeal.[2] Carter v. Lee, 283 F.3d 240, 252 n.11 (4th Cir. 2002) (stating that contentions not raised in the opening brief are generally considered waived); In re Apex Express Corp., 190 F.3d 624, 630 n.5 (4th Cir. 1999) (noting that issue not argued in appellant's brief is deemed waived on appeal); Baltimore Boulevard, Inc. v. Prince George's County, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (holding that arguments not discussed in appellate briefs are deemed abandoned).

B.

Our determination of whether the March 11, 2005, termination date is valid is governed by the tripartite test set forth in Pension Benefit Guar. Co. v. Mize Co., Inc., 987 F.2d 1059, 1063 (4th Cir. 1993). According to the Mize court, we must 1) first determine the earliest date on which participants had notice of

---

[1]While it is true that AMFA is proceeding under 29 U.S.C. § 1303(f), it would appear that these cases discussing §§ 1342 and 1348 are equally applicable here.

[2]Assuming, without deciding, that we reviewed the decision of PBGC de novo, our final disposition of this matter would be the same.

termination, (2) then determine the later date that serves the interests of PBGC, 3) while always assuring that there has been strict compliance with the statutory requirements for termination. Id.

There is no dispute that factors two and three are satisfied here. Thus, the only remaining issue is to determine the earliest date on which participants had reasonable notice of termination of the plan so that the plan participants "no longer had a justifiable expectation in the accrual of vested pension rights." Heppenstall, Inc., 633 F.2d at 302. Either actual or constructive notice is allowed. Pension Benefit Guar. Co. v. Republic Techs. Int'l, LLC, 386 F.3d 659, 664, 668 (6th Cir. 2004) (stating that the publication of a notice in the local newspapers and the issuing of a notice of termination the day before the termination date to the plan administrator and the union representative were sufficient); Heppenstall, 633 F.2d at 302 (expressing in dicta that, "Possibly notice to [the] collective bargaining representative as a class representative is sufficient); In re Pan Am, 777 F. Supp. 1179, 1185 (S.D.N.Y. 1991) (finding that the receipt of actual notice by plan participants satisfied PBGC's notice requirement); Pension Ben. Guar. Corp. v. United Air Lines, Inc., 436 F. Supp. 2d 909, 920 (N.D.Ill. 2006) (holding that the union representative's receipt of the notice of PBGC's intent to seek termination of the pension plan, publication in numerous newspapers and on the

8

websites of PBGC, the employer and the union--all on the termination date--provided constructive notice to the plan participants that the plan would be terminated). PBGC relies on constructive notice in arguing that its notice to the plan participants was sufficient.

According to the record before us today, and as already noted, PBGC 1) sent notices of termination of the plan, which were received on March 11, 2005, to AMFA's national director, the president of AMFA Local 9 in San Francisco, and UAL[3] 2) published, on March 11, 2005, notices of termination in the newspapers of UAL's major hubs: USA Today, San Francisco Chronicle, Los Angeles Times, Rocky Mountain News, Denver Post, Chicago Tribune, and Washington Post; and 3) issued a press release about the termination and posted that information on its website on March 11, 2005. AMFA also issued a press release about the termination and posted it on its website that same day, March 11, 2005.

We agree with the district court that, under the arbitrary and capricious standard, these efforts by PBGC were sufficient to provide to the plan participants reasonable notice of the termination of the plan on March 11, 2005, such that they "no longer had a justifiable expectation in the accrual of vested pension rights." Heppenstall, 633 F.2d at 302. Thus, any

---

[3]Thus, these individuals and/or entities received actual notice of the termination of the plan.

expectations that the plan participants had that the plan would continue were extinguished on March 11, 2005, when they received constructive notice of the termination. Republic Technologies, 386 F.3d at 667 ("Every court to consider the issue has concluded that expectation interests in the accrual of benefits are extinguished on the date the participants receive reasonable notice from PBGC that the plan is going to be terminated.").

Moreover, we note that there is no competent evidence in the record before us that the plan participants did not receive sufficient notice of the plan's termination. Conclusory allegations that they were unaware of the termination, without more, are insufficient to survive PBGC's motion for summary judgment.

C.

We will briefly address the remaining arguments here. First, AMFA's arguments concerning In re Pan Am., 777 F. Supp. 1179, are unavailing. Nevertheless, even if the district court misapprehended that decision, and we do not think that it did, a decision by a New York district court presents us with persuasive, not controlling authority.

Second, to the extent that AMFA contends that the propriety of the termination date is affected by UAL's failure to provide the plan participants with adequate notice of the plan's termination

10

date, we reject that argument. Simply stated, PBGC is charged with protecting the interests of the pension insurance system, 29 U.S.C. 1302(a), and cannot be required to rely on the actions of third parties, some of whose interests may be adverse to those of PBGC, in fulfilling its duty.

IV.

For the foregoing reasons, we hold that, under the applicable standard, PBGC's publication of notice of termination of the Ground Plan on the termination date constituted "reasonable notice" to the plan participants. Accordingly, we affirm the judgment of the district court.

<u>AFFIRMED</u>

11